IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FREDERICK SMITH,**             Case No. 5:17 CV 2338

    Petitioner,             Judge Dan Aaron Polster

    v.             Magistrate Judge James R. Knepp, II

**EDWARD SHELDON,**

    Respondent.             REPORT AND RECOMMENDATION

### INTRODUCTION

*Pro se* Petitioner Frederick Smith ("Petitioner"), a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Edward Sheldon ("Respondent") filed a Motion to Dismiss (Doc. 8), and Petitioner filed a response in opposition (Doc. 11). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated November 14, 2017). For the reasons discussed below, the undersigned recommends the Petition be dismissed.

### FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530.

The Ohio Ninth District Court of Appeals, Summit County, made the following findings of fact:

> {¶ 2} On December 23, 2014, L.E. spent the day with Frederick Smith, his brother, and his sister. L.E. had known Smith for about five months, and although they had previously been romantically involved, she considered him a friend at that time. The group took Smith's sister home and stopped at a liquor store on the way back to L.E.'s apartment, where Smith accused L.E. of having a relationship with his brother. After his brother left, Smith continued the accusations while methodically beating L.E. with a coat hanger, a belt, a shoe, his hands and fists, and his feet. According to L.E., Smith continued the beating in order to compel her to consent to sexual intercourse. During the course of the beating, which L.E. estimated to have lasted at least an hour, L.E. lost consciousness. When she awoke, her shirt was torn and her pants had been removed. L.E. managed to go to her mother's apartment in the building next door, and her mother contacted the police. L.E. was transported by ambulance to the hospital.
>
> {¶ 3} Detective Richard Morrison interviewed Smith, who had been arrested on allegations that he assaulted L.E. in connection with her injuries. During the interview, Smith agreed that he lost his temper when, in his words, L.E. was disrespectful; he acknowledged that he beat her with his hands, fists, and shoe; and he admitted that he placed his hands around her throat in a choking position. Smith then told Detective Morrison that after the beating, he had "consensual sex" with L.E. Detective Morrison's suspicions were raised by Smith's description of the events and, after he reviewed the medical records and photographs in the police file and interviewed L.E., Smith was charged with rape in violation of R.C. 2907.02(A)(1)(c), felonious assault in violation of R.C. 2903.11(A)(1), and sexual battery in violation of R.C. 2907.03(A)(1).
>
> {¶ 4} Smith pleaded not guilty and waived his right to a jury trial. During his bench trial, Smith objected to the admission of his statement to Detective Morrison on the ground that it was a confession and could not be admitted without corroborating evidence that Smith engaged in sexual conduct with L.E. for purposes of R.C. 2907.02(A)(1)(c). The trial court overruled his objection and admitted the statement and, at the close of the evidence, found Smith guilty of all three charges. The trial court merged the charges of rape and sexual battery for purposes of sentencing, sentenced him to prison terms of ten years with respect to the rape conviction and seven years with respect to the felonious assault conviction, and ordered the sentences to be served consecutively.

*State v. Smith*, 2016 WL 5724021, at ¶¶ 2-4 (Ohio Ct. App.).

**PROCEDURAL HISTORY**

State Court Conviction

On January 15, 2015, a Summit County Grand Jury issued an indictment charging Petitioner with rape, in violation of O.R.C. 2907.02(A)(1)(c); felonious assault, in violation of O.R.C. 2903.11(A)(1); and sexual battery, in violation of O.R.C. 2907.03(A)(1). (Ex. 1, Doc. 8-1, at 3). Petitioner, represented by counsel, waived his right to a jury and consented to a bench trial. (Ex. 2, Doc. 8-1, at 5). The trial court found Petitioner guilty on all three counts. (Ex. 3, Doc. 8-1, at 6).

Petitioner was sentenced on May 12, 2015. *Id*. At sentencing, the court merged the charges of rape and sexual battery as allied offenses of similar import. *Id*. The court found the charges of rape and felonious assault were not allied offenses and therefore did not merge. *Id*. Petitioner was sentenced to serve ten years on the rape conviction, and seven years for felonious assault, to be served consecutively for a total prison sentence of seventeen years. (Ex. 3, Doc. 8-1, 7).

Direct Appeal

*Ninth District Court of Appeals*

On May 18, 2015, Petitioner, through new counsel, timely filed a notice of appeal with the Ninth District Court of Appeals, Summit County. (Ex. 4, Doc. 8-1, at 10). In his brief, Petitioner asserted seven assignments of error:

1. The trial court abused its discretion and violated [Petitioner's] Federal and State constitutional rights to due process and a fair trial by admitting, over defense counsel's objection, [Petitioner's] prior alleged out of court statement/confession without independent proof of the "corpus delecti" of the charged crime.

2. The trial court erred in denying [Petitioner's] Criminal Rule 29 motion for acquittal.

3

3. The trial court's judgment was against the sufficiency of the evidence and was also against the manifest weight of the evidence.

4. The trial court committed reversible error by permitting the State to orally amend Count One of the indictment at the close of its case over defense counsel's objection.

5. The trial court committed reversible error when it failed to merge Count One (Rape) with Count Two (Felonious Assault) for sentencing purposes as they were allied offenses of similar import subject to merger.

6. The trial court abused its discretion and committed reversible error when it sentenced [Petitioner] to consecutive sentences, over defense counsel's objection, without strictly following applicable sentencing statutes.

7. The cumulative effect of the trial court's errors denied [Petitioner] a fair trial.

(Ex. 4, Doc. 8-1, at 12-13).

On September 30, 2016, the Court of Appeals affirmed the judgment of the trial court and overruled all seven assignments of error. (Ex. 7, Doc. 8-1, at 88-89).

*Ohio Supreme Court*

The circumstances surrounding Petitioner's *pro se* direct appeal filings to the Ohio Supreme Court are at issue in Ground One of this Petition. *See* Doc. 1, at 5. Petitioner's filing history was as follows:

1. November 8, 2016 – Petitioner mailed his Notice of Appeal to the Ohio Supreme Court. (Ex. 8, Doc. 8-1, at 90).

2. November 14, 2016[1] – Notice of Appeal received by the Ohio Supreme Court. *Id*.

3. November 15, 2016 – The Ohio Supreme Court issues a letter and returns all documents to Petitioner because the filing did not meet the requirements of the Supreme Court's Rules of Practice. Specifically, Petitioner failed to submit a notarized Affidavit of Indigency. (Doc. 11-3, Ex. C).

---

1. Petitioner's 45-day window to appeal to the Ohio Supreme Court expired November 14, 2016. *See* Ohio S.Ct.Prac.R. 7.01 (A)(1)(a)(i) (timing for appeal).

4. November 18, 2016 – Petitioner received the letter through the prison mail room. *Id.*

5. November 21, 2016 – Petitioner mailed a signed and notarized Affidavit of Indigency, and a Motion for Leave to File a Delayed Appeal. (Doc. 11-4, Ex. D); (Ex. 9, Doc. 8-1, at 91).

6. November 29, 2016 – The Ohio Supreme Court issues another letter and returns all documents to Petitioner because the filing did not meet the requirements of the Supreme Court's Rules of Practice. Specifically, Petitioner failed to sign his Motion for Delayed Appeal, and did not attach the required (notarized) affidavit containing facts in support of the Motion. (Doc. 11-5, Ex. E).

7. December 6, 2016 – Petitioner mailed a Notice of Appeal and Motion for Delayed Appeal with all of the required documents. (Doc. 11-6, Ex. F).

8. December 12, 2016 – Notice of Appeal and Motion for Delayed Appeal were received and filed by the Ohio Supreme Court. *Id.*

On February 22, 2017 the Ohio Supreme Court denied Petitioner's Motion for a Delayed Appeal without reaching the merits, and dismissed the case. (Ex. 10, Doc. 8-1, at 111).

### FEDERAL HABEAS CORPUS

Petitioner filed a pro se Petition with the United States District Court on November 6, 2017. (Doc. 1). In it, he raises three grounds for relief:

**GROUND ONE**: Denial of Fifth and Fourteenth Amendment Rights when the Ohio Supreme Court denied Petitioner's Motion for Delayed Appeal.

**GROUND TWO**: Insufficient evidence to support Ground One (Rape).

**GROUND THREE**: Due Process violations from the Court's abuse of discretion in: (1) admitting defendant's prior out-of-court statement; (2) allowing the State to amend Count One at conclusion of the State's case; and (3) ordering consecutive sentences.

(Doc. 1, at 5-9).[2]

---

2. Petitioner attaches Exhibits A through C to the Petition which are statements of support to each Ground for relief. *See* Docs. 1-2, 1-3, 1-4.

**MOTION TO DISMISS**

Respondent moves to dismiss the Petition as procedurally defaulted due to Petitioner's failure to raise his grounds for relief to all levels of the Ohio courts. (Doc. 8, at 8). In response, Petitioner concedes the Petition is procedurally defaulted, but argues he can overcome the default by showing cause and prejudice. (Doc. 11, at 15-16). For the reasons discussed below, the undersigned recommends the Petition be dismissed.

*Procedural Default*

Procedural default occurs when a petitioner fails to fairly present his claims in a federal constitutional context to the highest state court. *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999); *Anderson v. Harless,* 459 U.S. 4 (1982). In Ohio, "one complete round of the State's established appellate review process" means a defendant must fairly present his constitutional claims, on the record, to the trial court, the court of appeals, and the Supreme Court of Ohio on direct appeal. *Caver v. Straub,* 349 F.3d. 340, 346 (6th Cir. 2003) (quoting *O'Sullivan,* 526 U.S. at 845). This is to "[alert] [the state court] to the fact that the prisoner[] [is] asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (internal quotation marks omitted) (citations omitted). In order to accomplish this, a petitioner must fairly present the substance of his federal constitutional claims to the state courts before habeas relief. *Whitings v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Hence, "a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts." *Id.* (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Further, the claim must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

If the state argues a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

1. The Court determines whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2. The Court then determines whether the state courts actually enforced their procedural sanction;

3. The Court then decides whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4. Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original).

A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[ ] a constitutional claim with a 'colorable showing of factual innocence.' " *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 454 (1986)).

Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *Id.* (quoting *Stone v. Powell,* 428 U.S. 465, 492-93 (1976)).

Grounds Two & Three

Here, Petitioner properly raised the issues set forth in Grounds Two and Three on direct appeal to the Ninth District Court of Appeals. (Ex. 5, Doc. 8-1, at 12-13). After the court denied his appeal, he attempted to raise the same issues to the Ohio Supreme Court by filing a Notice of Appeal. (Ex. 8, Doc. 8-1, at 90). Then began a series of filing missteps.

Petitioner's initial Notice of Appeal was filed with the Ohio Supreme Court on November 14, 2016 – the final day of his 45-day deadline[3]. *Id.* The court returned his paperwork the following day, along with a letter notifying Petitioner that his filing was missing a required Affidavit of Indigency. (Doc. 11-3, Ex. C) (citing Ohio S.Ct.Prac.R. 3.06(A)). In his first attempt to correct the error, Petitioner attached the missing Affidavit of Indigency, and returned it with a Motion for Delayed Appeal. (Doc. 11-4, Ex. D); (Ex. 9, Doc. 8-1, at 91). The Supreme Court returned these documents a second time because Petitioner failed to sign the Motion for Delayed Appeal, and did not notarize his affidavit of supporting facts. (Doc. 11-5, Ex. E) (citing Ohio S.Ct.Prac.R. 7.01(A)(4)(a)(iii)). Petitioner corrected these errors, and submitted his documents again. Doc. 11-6, at Ex. F; Ex. 8, Doc. 8-1, at 93.

The Ohio Supreme Court received Petitioner's completed filing and completed Motion for Delayed Appeal on December 12, 2016. (Doc. 11-6, Ex. F). This was almost a full month after Petitioner's deadline for filing such an appeal. The court then denied Petitioner's Motion for

---

3. In his response, Petitioner emphasizes that he mailed his Notice of Appeal on November 8, 2016, well before the deadline, but it was not marked as "received" by the court until November 14, 2016 – six days later. (Doc. 11, at 13).

Delayed Appeal. (Ex. 10, Doc. 8-1, at 111). Under the Supreme Court of Ohio's Rules of Practice, if a party misses the 45 day filing deadline, he may file a Motion for Delayed Appeal under Ohio S.Ct.Prac.R.7.01(A)(1)(a). Petitioner's filing (once complete) was untimely-filed. In Petitioner's case, the court ultimately enforced its procedural rules by dismissing the case. (Ex. 10, Doc. 8-1, at 111); *Maupin*, 785 F.2d at 138. The denial of an untimely appeal to the Ohio Supreme Court is a procedural ruling, and "[t]he Sixth Circuit has repeatedly held that denial of review on the basis of Ohio S.Ct.R. II § 2(A)(4)(a)[4] is an adequate procedural ground to foreclose federal habeas review." *Henson v. Hudson*, 2009 WL 2567727, at *3 (N.D. Ohio) (citing *Bonilla,* 370 F.3d at 497; *Smith v. State of Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 431–32 (6th Cir. 2006)).

Here, since the appeal was not heard by the Ohio Supreme Court, Petitioner failed to present Grounds Two and Three to all levels of the Ohio courts. *See O'Sullivan,* 526 U.S. at 838 (procedural default occurs when a petitioner fails to fairly present his claims in a federal constitutional context to the highest state court); *see also Caver,* 349 F.3d. at 346 (In Ohio, "one complete round of the State's established appellate review process" means a defendant must fairly present his constitutional claims, on the record, to the trial court, the court of appeals, and the Supreme Court of Ohio on direct appeal.) (quoting *O'Sullivan,* 526 U.S. at 845). Therefore, the undersigned finds these grounds are procedurally defaulted.

*Cause and Prejudice*

In his brief, Petitioner concedes his Notice of Appeal to the Ohio Supreme Court was not timely, but raises a sympathetic argument for cause and prejudice to overcome the default. *See*

---

4. Ohio S.Ct.R. II § 2(A)(4)(a) became Ohio S.Ct.Prac.R. 7.01(A)(1)(a) effective January 1, 2013. *See The Amendments to the Rules of Practice of the Supreme Court of Ohio*, at (http://www.supremecourt.ohio.gov/RuleAmendments/documents/Amend.%20to%20the%20SC%20Rules%20of%20Practice(FINAL)(Frost).doc) (last visited July 12, 2018).

Doc. 11, at 13. Petitioner asserts he was unduly prejudiced by "something external to the Petitioner . . . that cannot be fairly attributable to him", and points to the fact that his initial Notice was mailed on November 8, 2016 and not filed by the Supreme Court until November 14, 2016. *Id.* (quoting *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001)). Petitioner argues he was unduly prejudiced by unreasonable delays in the mail system outside of his control. *Id*. He asserts the appeal would have been timely filed had it arrived to the Ohio Supreme Court in a timely manner. *Id*. Petitioner further argues the court should have "[held] his documents in abeyance pending the needed affidavit of indigency" (Doc. 11, at 14), but provides no case law, or procedural rule requiring the court to do so.

The undersigned sympathizes with Petitioner's frustrations with navigating the prison mail system, however, it is important to first recognize there is no "prison mailbox rule" in Ohio. The United States Supreme Court "adopted the mailbox rule in holding that when a prisoner is acting *pro se*, his notice of appeal is considered 'filed' under *federal* law when he turns the petition over to the federal authorities." *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (emphasis added) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). The Ohio Supreme Court has expressly rejected this rule. *See State ex rel. Tyler v. Alexander*, 52 Ohio St. 3d 84, 85 (1990) ("we reject appellant's suggestion that 'filed in the court from which the case is appealed' really means 'delivered to the prison mail room.'"). Thus, an Ohio state prisoner's legal filings are not considered filed until they are received by the court. *Id.*

Moreover, Petitioner's timeliness dilemma in this case was largely a result of his own missteps, rather than mail delays. This is because even when he mailed the Petition on November 8, 2016, it was not fully complete. The filing requirements, as to both timeliness and content, are clearly (and publically) set forth in the Supreme Court of Ohio Rules of Practice section 7.01

(A)(1)(a). Under Ohio and federal law, citizens are conclusively presumed to know the law. *See Roberts v. Wingard*, 210 F.3d 372, 376 (6th Cir. 2000) (holding that because Ohio's § 2969.25(A) affidavit requirement was in effect at the time of filing, petitioner's argument for not including one with his appeal because he was unaware lacked merit). Thus, the "cause" asserted by Petitioner is not something external to him, but his own missteps. This is insufficient to overcome procedural default.

In sum, there would be no issue here if the Petition was fully complete when it was received by the Ohio Supreme Court on November 14, 2016. Unfortunately, it was missing a few key pieces required by Ohio court rules. Petitioner has not shown any cause external to himself that "prevented [his] compliance with a state procedural rule." *Bonilla*, 370 F.3d at 498. Thus, the undersigned finds the Grounds Two and Three are procedurally defaulted and recommends they be dismissed.

### Ground One

In Ground One, Petitioner asserts his Fifth and Fourteenth Amendment rights were violated when the Ohio Supreme Court denied his Motion for Delayed Appeal. (Doc. 11, at 2). This claim is not one which is appropriate for federal habeas review because Petitioner is not challenging his detention or conviction in this ground. *See* 28 U.S.C. § 2254 ("a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); *see also Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."); *see also Stillman v. Moore*, 2006 WL 2787112, at *9 (S.D. Ohio) (The writ, traditionally, has been available when

the petitioner is in custody or threatened with custody and the detention is related to a claimed constitutional violation.").

Here, the Ohio Supreme Court's enforcement of its procedural rules is a collateral matter unrelated to Petitioner's detention and therefore not appropriate for habeas review. *See id*. Therefore, the undersigned recommends the Petition be dismissed.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends the Petition be dismissed.

s/James R. Knepp, II<br>
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).